## UNITED STATES DISTICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

MARCUS BANKS AND RALIATU BANKS,          *
AS PARENTS AND NEXT FRIEND OF R.B.
4401 ANTRIM COURT                         *
ABERDEEN, MARYLAND, 21001
[Harford County]                          *

and                                       *

MARCUS BANKS                              *
4401 ANTRIM COURT
ABERDEEN, MARYLAND, 21001                 *
[Harford County]
                                          *
and                                       *

RALIATU BANKS                             *
4401 ANTRIM COURT
ABERDEEN, MARYLAND, 21001                 *
[Harford County]                          *

      **PLAINTIFFS,**          *

      *v.*                     *          **CASE NO. <u>1:20-cv-0768</u>**

                                          *

UNITED STATES OF AMERICA,

                                          *

      **DEFENDANT.**            *

Serve:      Hon. William Barr             *
            United States Attorney General
            United States Department of Justice
            950 Pennsylvania Avenue, NW    *
            Washington, D.C. 20530
                                          *
            Robert K. Hur
            United States Attorney         *
            District of Maryland
            36 South Charles St., 4th Floor *
            Baltimore, Maryland 21201

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## COMPLAINT

Plaintiffs, Marcus Banks and Raliatu Banks, individually and on behalf of their minor child, R.B., by and through their attorneys, hereby file this Complaint against the United States of America, and for their causes of action, state in support as follows:

## PARTIES

1.      Plaintiff, Marcus Banks, is a United States citizen domiciled at 4401 Antrim Court, Aberdeen, Harford County, Maryland, 21001.

2.      Plaintiff, Raliatu Banks, is a United States citizen domiciled at 4401 Antrim Court, Aberdeen, Harford County, Maryland, 21001.

3.      Plaintiff, R.B., is a United States citizen and the minor child of Marcus and Raliatu Banks, and is domiciled at 4401 Antrim Court, Aberdeen, Harford County, Maryland, 21001.

4.      At all relevant times, Plaintiffs Marcus Banks and Raliatu Banks were and continue to be husband and wife.

5.      The Defendant in this action is the United States of America.

6.      At all times relevant to the Complaint, the Defendant, the United States of America, was the employer of the care providers who were responsible for the care and supervision of R.B. while he was at the Aberdeen Proving Ground Child Development Center on July 11, 2018.

7.      Defendant, United States of America, may be served with process in accordance with rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the Attorney General and the United States Attorney for the District of Maryland, Robert K. Hur.

8.      The United States Army is an agency of the United States of America, Department of Defense. The United States of America, Defendant herein, through its agency, the United States

2

Army, at all times material, owned, operated, and controlled Aberdeen Proving Ground and the Child Development Centers on base at Aberdeen Proving Ground, including the Child Development Center, Bldg. 2485, Carbine Road, where R.B. was injured, and through its agency, the United States Army, Department of Defense, staffed the Child Development Centers with its agents, servants and/or employees.

9.      At all times material hereto, all persons involved in the care and supervisory services provided to R.B. at the Child Development Center, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone; were, at all times material hereto, the servants, actual and/or apparent agents, employees, and representatives of the United States and acting within the scope of their employment for the United States.

10.     The term "Defendant" will refer to the United States of America and its officers, agents, servants, employees, and/or representatives. At all times relevant, the acts and omissions by the agents, servants, and/or employees of the Defendant including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, were done with the full authorization and ratification of the Defendant and were done in the normal and routine course and scope of their agency, service and/or employment. Whenever in this Complaint it is alleged that Defendant omitted any act or thing, it is meant to include and allege that the Defendant's officers, agents, servants, employees and/or representatives omitted such act or thing.

## **JURISDICTION AND VENUE**

11.     This Court has jurisdiction over this action pursuant to the Federal Tort Claims Act ("FTCA"), for severe injuries arising out of the negligent and wrongful acts and/or omissions of

employees, actual and/or apparent agents, servants, or representatives of the United States, while acting within the course and scope of their employment, actual and/or apparent authority, servitude or representative capacity, under the circumstances where the United States of America, if a private person, would be liable to the Plaintiffs under the laws of Maryland, where the acts or omission occurred.

12.     Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1346(b) and 25 U.S.C. § 2671 *et seq.*, which gives exclusive subject matter jurisdiction of Federal Tort Claims against the United States to the Federal District Courts.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), because the Defendant is the United States of America, the Plaintiffs reside in this District, no real property is involved in this action, and a substantial part of the events or omissions giving rise to this claim occurred in this District. Venue is proper in the U.S. District Court for the District of Maryland, Northern Division, pursuant to 28 U.S.C. § 100.

## ADMINISTRATIVE CLAIM EXHAUSTED

14.     On July 11, 2019, the Plaintiffs submitted administrative claim Form 95, attached hereto as Exhibit 1, to the United States Department of Army. Said Notice was timely and properly submitted and served pursuant 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged by on behalf of the agency by the Department of the Army, Army Materiel Command Legal Center – APG, Office of the Staff Judge Advocate, Claims Attorney Shonte Fletcher. The Plaintiffs provided medical records and other supporting information. The Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

15.     More than six months have elapsed since Plaintiffs filed the administrative claim. To date, the Department of the Army has failed to make a final disposition of the administrative claim.

## **FACTS**

14.     This is a negligence action in which an infant suffered severe second and third degree burns on his hands and his right knee while at daycare, resulting in sedation, surgery, pain medication, antibiotics, permanent scarring, developmental regression, limited mobility and socialization, among other injuries, because the care providers acting as agents, employees and/or representatives for Defendant entrusted with his wellbeing failed to exercise reasonable care, attention or supervision by (a) placing him on or near a hot surface; (b) allowing him to access a hot surface, (c) failing to protect him from the hot surface before he suffered injuries; (d) failing to remove him from the hot surface; (e) negligently moving out of his reach and backing away from him while he was on the hot surface; and (f) failing to appropriately treat his injuries or exercise reasonable care to prevent further injury.

15.     On July 11, 2018, R. B. was seven months old and the youngest, and least mobile, student of his daycare class at the Child Development Center, Bldg. 2485, Carbine Road at Aberdeen Proving Ground.

16.     On that day, R.B. had not learned how to walk, stand, or sit up on his own. R.B. had very recently learned how to crawl and scoot.

17.     On that day, R.B. had not yet learned to speak and was not able to articulate his feelings or emotions with words.

18.     R.B.'s care providers at the Child Development Center, including Sharionette Nicole Dawson, Shanelle Smothers, Gail Stone, and Tammy Ford were aware of R.B.'s mobility and speech limitations.

19.     On July 11, 2018, R.B. was dressed in a shot sleeved t-shirt and shorts, with his legs exposed from the knee down to his feet.

20.     On that day the weather was sunny and the high was approximately 90 degrees Fahrenheit.

21.     On July 11, 2018, Sharionette Nicole Dawson and Shanelle Smothers were supervising R.B. and the other children at the Child Development Center.

22.     At approximately 3:00 pm on July 11, 2018, Sharionette Nicole Dawson and Shanelle Smothers used a crib to transport each student, including R.B., to an outside area.

23.     The outside area consisted of an uncovered playground with a blacktop surface.

24.     At approximately 3:00 pm, the air temperature was at least 89 degrees.

25.     At approximately 3:11 pm, R.B. was the taken out of the crib and placed onto the black top surface.

26.     For several minutes, R.B. was left unattended and used his limited mobility to crawl and scoot on the black top surface.

27.     For at least part of the time R.B. was on the black top surface, he was in direct view of Sharionette Nicole Dawson and Shanelle Smothers.

28.     At one-point while R.B. was on the black top surface, he crawled to Sharionette Nicole Dawson, who proceeded to back away from him as he crawled towards her.

29.     The surface that R.B. was crawling on was incredibly hot.

30.     R.B.'s hands and knees were uncovered without protection from the hot surface.

6

31.     R.B. did not yet have the strength to lift himself up into a sitting position to take his exposed skin off the hot surface.

32.     R.B. was too young to vocally articulate the painful sensations.

33.     There was no mat or other covering to protect R.B. from direct exposure to the hot surface.

34.     The agents, servants and employees of the United States including Sharionette Nicole Dawson and Shanelle Smothers, allowed R.B. to crawl without attention or care on an incredibly hot surface.

35.     After several minutes on his hands and knee on the hot surface, R.B. was picked up and removed to a shaded area outside.

36.     R.B. was eventually carried inside before the rest of the students.

37.     R.B. suffered from an open wound on his right knee where his infant skin had burned through.

38.     R.B. was crying during these events. R.B.'s caretakers including Sharionette Nicole Dawson and Shanelle Smothers acknowledged R.B. was crying but told Plaintiffs they thought he was being "fussy."

39.     At one point, a gauze pad was applied to R.B.'s open wound on his knee. No other medical attention was provided by the staff.

40.     The staff failed to adequately provide care and attention to his wounds. The staff failed to contact a doctor or any other medical professional other than an onsite nurse.

41.     The Plaintiffs were first contacted by staff at the Child Development Center, possibly Ms. Beth Command, at approximately 4:00pm.

42.     The Plaintiffs did not immediately see the condition of R.B.'s knee due to the gauze pad covering the knee.

43.     Plaintiffs were asked to come to the Child Development Center because R.B. was injured. When Plaintiffs arrived, Plaintiffs were told R.B. suffered a rug burn, and needed some tender, love and care ("TLC").

44.     Despite the recommendation by the staff at the daycare that R.B. only needed TLC, the Plaintiffs made an appointment with R.B.'s pediatric care providers, Bright Oaks Pediatric Center, and R.B. was treated by Jennifer Hudson, CRNP that same afternoon. During that appointment, Plaintiffs first had the opportunity to view the severe burns to R.B.'s right knee, which was previously covered by a gauze pad.

45.     R.B.'s pediatrician immediately directed Plaintiffs to take R.B. to the pediatrics burn unit at John's Hopkins Hospital and CRNP Hudson contacted child protective services after learning about the events that led to R.B.'s burns.

46.     Plaintiffs took R.B. to the emergency room at John's Hopkins Hospital where R.B. was diagnosed as having second and third degree burns on both hands and his right knee.

47.     Plaintiffs were required to consent to allowing R.B. to undergo ketamine sedation for a debridement procedure because local anesthesia would not provide adequate pain control.

48.     Plaintiffs witnessed R.B.'s sedation and heard R.B. crying during the debridement procedure.

49.     R.B. was admitted to the John's Hopkins burn unit overnight for treatment of his injuries.

50.     During his admission, Plaintiffs were consulted by a social worker regarding the events that led to R.B.'s severe injuries.

51.     R.B. underwent evaluations for physical therapy prior to his discharge.

52.     A right-hand split was created for his wounds, and dressings and ointment was applied to all his burns. R.B. was discharged on July 12, 2018 with antibiotics, pain medication, and detailed instructions on treatment of his burned limbs.

53.     Plaintiffs followed the instructions of R.B.'s physicians in changing his dressings, applying topical cream, antibiotic treatment, and pain relief for weeks following his admission.

54.     R.B. was seen for several follow up appointments where he participated in physical therapy and additional treatment.

55.     R.B. was not able to return to daycare following his injuries. R.B. suffered from developmental regression and would not feed by the bottle.

56.     Plaintiff, Mrs. Raliatu Banks, was forced to breast feed R.B. until he was prepared for solid foods, several months after R.B.'s injuries.

57.     R.B. experienced a severe regression in his socialization and became very attached to his mother, Mrs. Raliatu Banks.

58.     R.B.'s mobility was limited in the days, weeks and months following his injuries. R.B. would try to crawl using only his left knee so as to keep his right knee off the floor. R.B.'s developmental mobility was delayed due to his injures.

59.     R.B. spent more than four months with full time care providers outside the daycare system.

60.     R.B. continues to have a scar on his right knee.

61.     As a result of the negligence of the care providers acting as agents, actual or apparent servants, or representatives for Defendant, at just seven months old, R.B. suffered severe and permanent injuries including but not limited to, second and third degree burns, ketamine

sedation, surgery requiring pain medication and antibiotics, permanent scarring, developmental regression, and limited mobility and socialization, among other injuries.

62.     As a result of the negligence, Plaintiffs have suffered, and will continue to suffer, severe mental anguish and pain and suffering from the severe and lasting injuries R.B. suffered, treatment R.B. received, and economic damages incurred while providing care and treatment to R.B. for the injuries he suffered.

63.     At the time the agents, servants and/or employees of the Defendant United States, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, took R.B. outside, the agents, servants and/or employees were acting within the scope of their employment. At the time the agents, servants and/or employees of the Defendant observed R.B. outside, the agents, servants and/or employees were acting within the scope of their employment by the Defendant United States. The Defendant's agents, servants and/or employees Sharionette Nicole Dawson and Shanelle Smothers were both acting within the scope of their employment at the time of the negligence and failure to provide reasonable and adequate care to R.B. At all times relevant to this claim, the agents, servants and/or employees responsible for caring for R.B. on July 11, 2018 were acting within the scope of their agency, service and/or employment for Defendant.

## COUNT I – NEGLIGENCE

64.     Plaintiffs incorporate all paragraphs set forth within this Complaint as if set forth in their entirety herein.

65.     At all times relevant, the Defendant, the United States of America, and its agents, servants, representatives, and/or employees, including but not limited to Sharionette Nicole

Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Ston, undertook a duty to provide safe and reasonable care, supervision, oversight, and attention to R.B. while he was under Defendant's care.

66.     Defendant and its agents, servants, representatives and/or employees, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, owed a duty to protect the children under its care, including R.B., from foreseeable risks of harm including hot surfaces, such as contact with an uncovered blacktop surface exposed to sunlight and high temperatures.

67.     Defendant and its agents, servants, representatives, and/or employees, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, breached its duty to R.B. by placing R.B. on a hot surface, allowing R.B. to access hot surfaces unimpeded, failing to remove R.B. from a hot surface after an extended period of time, and failing to provide adequate care, supervision and attention to R.B. before, during and after he was exposed to a hot surface and suffered injuries.

68.     Defendant and its servants, agents, representatives and/or employees, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, were negligent and failed to provide reasonable care, supervision, oversight or attention to R.B. in the following ways:

      a.   Placing R.B. on or near an unreasonably hot surface;

b.   Allowing R.B. to access an unreasonably hot surface for an extended period of time;

c.   Allowing R.B. to crawl on an unreasonably hot surface without the protection of clothing or other protected coverings.

d.   Allowing R.B. access to an unreasonably hot surface with the knowledge that he is not able to stand, sit up, or pull himself up to avoid contact with an unreasonably hot surface.

e.   Failing to monitor R.B. while outside and on or near an unreasonably hot surface;

f.   Failing to monitor, supervise, or reasonably attend to R.B. as he was crawling on an unreasonably hot surface for an extended period of time in full view of the care providers.

g.   Failing to remove R.B. from the unreasonably hot surface.

h.   Failing to remove R.B. from an unreasonably hot surface after an extended period of time.

i.   Failing to attend to and treat R.B.'s injuries.

j.   Failure to create or implement reasonable policies and procedures to prevent the foreseeable injuries R.B. suffered.

k.   Failure to comply with reasonable policies or procedures to prevent the foreseeable injuries R.B. suffered.

69.     The injuries R.B. suffered were foreseeable to the agents, servants, representatives and/or employees of the Defendant.

70.     The harm R.B. suffered is within the field of danger which was and/or should have been foreseen by the agents, servants, representatives and/or employees of Defendant when those agents, servants, representatives and/or employees placed R.B. on the ground outside his daycare facility on July 11, 2018.

71.     As a direct and proximate cause of these negligent acts, Defendant and its agents, servants, representatives and/or employees caused R.B. to suffer severe and permanent injuries, both physically and emotionally, and caused R.B. to incur physical and emotional pain and suffering, and caused Plaintiffs to incur past and future medical expenses, lost income, and other damages.

72.     In addition, all Plaintiffs have suffered an immense amount of stress and mental anguish as a result of R.B.'s severe and permanent injuries.

## COUNT II – NEGLIGENCE PER SE

73.     Plaintiffs incorporate all paragraphs set forth within this Complaint as if set forth in their entirety herein.

74.     At all times relevant, the Defendant, the United States of America, and its agents, servants, representatives and/or employees, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, undertook a duty to provide safe and reasonable care, supervision, oversight, and attention to R.B. while he was under Defendant's care.

75.     Defendant, its agents, servants, representatives and/or employees, owed a duty to protect the children under its care, including R.B., from foreseeable risks of harm including hot surfaces, such as contact with an uncovered blacktop surface exposed to sunlight and high temperatures.

76.     Defendant and its agents, servants, representatives and/or employees breached its duty to R.B. by placing R.B. on a hot surface, allowing R.B. to access hot surfaces unimpeded, failing to remove R.B. from a hot surface after an extended period of time, and failing to provide adequate care, supervision and attention to R.B. before, during and after he was exposed to a hot surface and suffered injuries.

77.     Defendant and its servants, agents, and/or employees, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, breached its duty to R.B. by failing to comply with the laws and regulations of the United States of America and the State of Maryland, including, but not limited to, the following:

     a.  Code of Federal Regulations 45 C.F.R. § 98.41(A)(1)(v) (Building and physical premises safety, including identification of and protection from hazards, bodies of water, and vehicular traffic);

     b.  Code of Federal Regulations 45 C.F.R. § 98.44(b)(1)(i) (Each of the requirements relating to matters described in § 98.41(a)(1)(i) through (xi) and specifying critical health and safety training that must be completed before caregivers, teachers, and directors are allowed to care for children unsupervised)

     c.  Code of Federal Regulations 32 C.F.R. § 79.6, *et seq.* including, but not limited to:

          i.  Areas used by children have adequate lighting for safety, evacuation, and security measures, are ventilated and kept at a comfortable temperature;

ii.   A plan exists for dealing with medical emergencies that include written parental consent forms, and transportation arrangements approved by the DoD Component;

iii.   A safety walk-through of all play areas is conducted daily. Safety concerns are identified, documented, and corrected immediately or put off limits to children until they can be corrected;

iv.   The building, playground, and all equipment are maintained in safe, clean condition, are in good repair, and there are no observable safety hazards in the indoor and outdoor program space;

v.   The outdoor environment meets the needs of children, allows them to be independent and creative, and have access to a variety of age-appropriate outdoor equipment and games. Staff plan and participate in children's active play;

vi.   The playground equipment is arranged to ensure that a child is visible and supervision is maintained; and

vii.   In the CDC:

1.   Children can be observed at all times by parents and supervisors; and

2.   There is visual access into and throughout activity rooms used for care, including nap time. Closed-circuit television, vision panels, and convex mirrors are used as necessary to facilitate visual access.

78.     The injuries R.B. suffered were foreseeable to the agents, servants, representatives and/or employees of the Defendant.

79.     The Defendant directly and through its agents, servants, representatives and/or employees is prima facie guilty of negligence due to its violations of the rules and regulations outlined herein.

80.     The Defendant's violation of the rules and regulations outlined herein directly and through its agents, servants, representatives and/or employees was a direct and proximate cause of R.B.'s injuries.

81.     As a direct and proximate cause of these negligent acts, Defendant and its agents, servants, representatives and/or employees caused R.B. to suffer severe and permanent injuries, both physically and emotionally, and did incur physical and emotional pain and suffering, and caused Plaintiffs to incur past and future medical expenses, lost income, and other damages.

## COUNT III – NEGLIGENT SUPERVISION, HIRING, TRAINING, MONITORING, AND NELGIGENT POLICIES AND PROCEDURES

82.     Plaintiffs incorporate all paragraphs set forth within this Complaint as if set forth in their entirety herein.

83.     Defendant directly and through its agents, servants, representatives and/or employees, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, has a duty to properly supervise, hire, train, monitor, control, instruct and manage its agents, servants and employees to perform their job duties in a reasonable and safe manner.

84.     Defendant directly and through its agents, servants representatives and/or employees has a duty not to employ any agents, servants or employees who pose an unreasonable

risk to those persons who the agents, servants or employees would foreseeably come into contact with, including children under the care of Defendant such as R.B.

85.    Defendant directly, and/or through its agents, servants and employees, including Sharionette Nicole Dawson and Shanelle Smothers, had a duty to all students under its care, including R.B., to do the following:

a.    Use reasonable care for the protection and well-being of all students under the care of its agents, servants and/or employees;

b.    Use reasonable care in the maintenance of safe and adequate facilities;

c.    Select and retain competent care providers; and

d.    Formulate, adopt and enforce adequate rules and policies to ensure safe and reasonable care for all students under the care of its agents, servants and employees, including R.B.

86.    Defendant directly and/or through their actual and/or apparent agents, servants, representatives and/or employees, including but not limited to Sharionette Nicole Dawson; Shanelle Smothers; Rhonda Simons; Cindy Selchert; Tammy Ford; Beth Command; Norma Warwick; Mary McNutt; and Gail Stone, breached its duty to R.B. by failing to use reasonable care for the protection and well-being of R.B. in the following manner:

a.    Defendant failed to properly supervise, train, monitor, control, instruct, or manage its agents, servants and employees in the reasonable and safe manner of performing their job duties, including but not limited to:

i.    The failure to train or instruct the care providers not to place infants on or near a hot surface,

ii. The failure to train or instruct the care providers not to take infants outside during unreasonably high temperatures,

iii. The failure to train or instruct the care providers not to expose infants to surfaces under direct sunlight at high temperatures for extended periods of time,

iv. The failure to train or instruct the care providers to prevent the infants from accessing hot surfaces,

v. The failure to train or instruct the care providers to test potentially dangerous surfaces before allowing infants access to the surfaces, and

vi. The failure to train or instruct the care providers to recognize and treat injuries, and remove the infant from the hot surface before injuries occur.

b. Failing to properly credential, supervise, or provide adequate training to agents, servants and/or employees who cared for R.B.;

c. Failing to establish, follow and/or enforce appropriate policies, procedures and/or protocols;

d. Failing to establish, follow and/or enforce appropriate policies and procedures related to allowing the students access to the uncovered, outside, blacktop area;

e. Failing to formulate, adopt or enforce safe and appropriate policies and procedures for access to the outside area of the daycare center; and

f. Failing to formulate, adopt or enforce appropriate and reasonable policies and procedures for providing care and treatment to injured children, including R.B.

87.     Defendant has a duty not to employ any agents, servants, representatives, and/or employees who pose an unreasonable risk to those persons who the agents, servants, representatives and/or employees would foreseeably come into contact with, including children under the care of Defendant such as R.B.

88.     Defendant failed to properly hire, supervise or monitor its agents, servants, representatives and/or employees in that its agents, servants, representatives and/or employees including Sharionette Nicole Dawson and Shanelle Smothers, were unfit to serve as caretakers without additional supervision, of the children at the daycare center, especially infant children, such as R.B.

89.     Defendant knew, or in the exercise of reasonable care should have known that the failure to properly hire, supervise and monitor its agents, servants and employees would result in serious injuries to the children under their care, including R.B.

90.     The Defendant knew, or in the exercise of reasonable care should have known that the failure to properly supervise, train, monitor, control, instruct and manage its agents, servants, representatives and/or employees in the proper manner of performing their job duties and responsibilities would result in serious injuries to the children under their care, including R.B.

91.     The Defendant had actual or constructive knowledge that its agents, servants, representatives and/or employees, including Sharionette Nicole Dawson and Shanelle Smothers, were incompetent to care for R.B. without additional aide or supervision, and it was or should have been foreseeable to Defendant that children such as R.B. would suffer injuries as a result of the failure of Sharionette Nicole Dawson and Shanelle Smothers to provide reasonable care, attention and supervision to R.B.

19

92.     As a direct and proximate result of Defendant's conduct and omissions, including the failure to supervise, hire, train, monitor, control, instruct or manage its agents, servants, representatives and/or employees to perform their job duties in a reasonable and safe manner, R.B. was seriously and permanently injured, both physically and emotionally, and R.B. suffered severe non-economic damages including emotional pain and suffering, mental anguish, and all other damages allowable by law.

93.     As a direct and proximate result of Defendant's conduct and omissions described herein, R.B.'s parents also suffered economic and non-economic damages including, but not limited to, physical and emotional pain and suffering, mental anguish, lost income and all other damages allowable by law

## COUNT IV - LOSS OF CONSORTIUM

94.     Plaintiffs incorporate all paragraphs set forth within this Complaint as if set forth in their entirety herein.

95.     Defendant's wrongful and negligent acts proximately injured Plaintiffs Marcus Banks and Raliatu Banks, and caused Plaintiffs to lose R.B's services and caused Plaintiffs to incur past expenses for the care and treatment of R.B., and Plaintiffs will incur expenses for any future treatment R.B. has for his injuries during his minority.

96.     Defendant's wrongful and negligent acts proximately injured Plaintiffs who incurred economic expenses including lost income and additional expenses for the care and supervision of R.B. as a result of his developmental and social regression.

97.     Defendant's wrongful and negligent acts proximately injured Plaintiffs who experienced emotional pain and suffering and mental anguish as a result of R.B.'s severe and permanent injuries and treatment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

98.    Enter an award for R.B. for damages in an amount to be determined at trial for:

   a.   Noneconomic damages, including, but not limited to, past and future pain and suffering, inconvenience, disfigurement, physical impairment, developmental regression, social regression, mental anguish, emotional pain and suffering;

99.    Enter an award for Plaintiffs, the parents and guardians of R.B.,  for damages in an amount to be determined at trial for:

   a.   All special and economic damages, including, but not limited to, past and future medical expenses, past economic expenses, benefits, and income; and

   b.   Noneconomic damages, including, but not limited to, past and future pain, suffering, inconvenience, filial care, parental care, lost consortium, mental anguish, emotional pain and suffering.

100.   Enter an award for Plaintiffs, both the parents and guardians of R.B. and R.B., for:

   a.   Pre and post-judgment interest and all other interest recoverable;

   b.   Award costs; and

   c.   Grant such further and other relief as the Court, justice, or equity may require or deem proper in the circumstances.

Dated:  March 23, 2020                    RESPECTFULLY SUBMITTED,

                                          /s/ Robert K. Jenner
                                          Robert K. Jenner (Bar No. 04165)
                                          Kathleen Kerner (Bar No. 18955)
                                          Jenner Law, P.C.
                                          1829 Reisterstown Road, Suite 350
                                          Baltimore, Maryland 21208

Telephone:  (410) 413-2155
Facsimile:  (410) 982-0122
Email: RJenner@jennerlawfirm.com
Email: KKerner@jennerlawfirm.com

*Counsel for Plaintiffs*